## CITY OF NEW YORK v. DU BOIS.

(Circuit Court, W. D. Pennsylvania. December 23, 1897.)

1. POWER OF ATTORNEY—CONSTRUCTION—AUTHORITY TO COMPROMISE SUIT.

A power of attorney given by a plaintiff in a pending suit, which empowered the agent "to carry on and conduct to final consummation, or to compromise" the case, and all damages or demands therein claimed in such manner and on such terms as to him might seem expedient, does not authorize the agent to withdraw the litigation from the court in which it is pending, and by agreement with the defendants to create a special tribunal to determine the rights of the parties. The power given to compromise implies the exercise by the agent of his own judgment as to the terms accepted, and cannot be delegated by the agent to any other person or tribunal.

2. SAME—EXERCISE OF POWER—UNUSUAL AND UNREASONABLE SETTLEMENT.

Under a power of attorney authorizing an agent to compromise a pending suit, an agreement by the agent to a method of settlement which is unreasonable and unusual in its terms, and unfair, is not binding on the principal.

3. REFERENCE—CONDUCT OF HEARING—NOTICE OF TAKING OF EVIDENCE.

The taking of evidence by referees without notice of the time or place to the parties, or the conducting of private inquiries by a referee regarding matters involved, outside of the hearing, vitiates the award or findings.

4. SAME—REFERENCE UNDER STIPULATION COSTS.

Where referees were appointed, and entered upon their duties, under a stipulation between the parties which provided that their fees should be a stipulated sum for each session between certain hours, to be paid by the successful and taxed against the losing party, the successful party cannot recover from the losing party for fees paid the referees, in the absence of proof as to the number or length of sessions held, or that any fees were taxed against the defendant.

This was an action by the mayor, aldermen, and commonalty of the city of New York and the city of Brooklyn against John E. Du Bois. A jury having been waived, the court made the following finding of facts:

(1) On the 24th day of June, 1885, John Du Bois executed, and, on the 24th day of July, 1885, delivered to Thomas B. Farrington, a power of attorney, of which the following is a copy:

"John Du Bois vs. The Trustees of the New York and Brooklyn Bridge, impleaded with the Mayor, Aldermen, and Commonalty of the City of New York and the City of Brooklyn.

"In the Circuit Court of the United States, Southern District of New York. In Equity.

"Know all men by these presents, that I, John Du Bois, of the borough of Du Bois, in the county of Clearfield, in the state of Pennsylvania, being the above-named plaintiff, do hereby make, constitute, and appoint, and I have hereby made, constituted, and appointed, Thomas B. Farrington, of Minneapolis, state of Minnesota, my true and lawful attorney for me and in my name and stead to carry on and conduct to final consummation or to compromise the above-stated case, and all claim, demand, or damages therein claimed or mentioned, in such manner or on such terms as to my said attorney may seem expedient, with the same power, force, and effect as I could do if personally present; also to receive and receipt for all money in any manner accruing from or out of the same and for the same; and this power is hereby, in consideration of other valuable considerations and one dollar to me in hand paid, made irrevocable for and during the period of three months from the 14th day of September, A. D. 1885, this instrument being a renewal and extension for three months of a similar power of attorney executed on the 14th day of March, 1885, and made irrevocable for six months thereafter. As witness my hand and seal this 24th day of June, A. D. 1885.

"[Signed]                                          John Du Bois. [Seal.]
"Witness: Geo. R. Vosburg."

(2) At the same time said Thomas B. Farrington executed and delivered to John Du Bois a separate instrument in writing, of which the following is a copy:

"Whereas, John Du Bois has delivered to me a power of attorney this day to settle and compromise a certain case in the circuit court of the United States in the Southern district of New York, wherein he is plaintiff, and the Trustees of the New York and Brooklyn Bridge, impleaded with the commonalty, the mayor and aldermen of the cities of New York and Brooklyn, the defendants: Now, in case I shall settle and compromise said claim, I agree that immediately after the receipt of the money, or so much thereof accruing from settlement, to pay over and deliver to my said principal, John Du Bois, the sum of twenty-five thousand dollars, and in no event to settle said case by compromise in such a manner that he shall not receive and realize said sum out of said compromise. As witness my hand and seal this twenty-fourth day of July, A. D. 1885.                    Thos. B. Farrington.

"Attest: Geo. R. Vosburg."

(3) John Du Bois died May 5, 1886, having by his last will (duly probated after his death) devised and bequeathed his entire estate to John E. Du Bois, the defendant herein, whom he named as his executor, and to whom letters testamentary on said will were issued on May 18, 1886, by the register of Clearfield county, Pa.

(4) On the 10th day of June, 1886, the defendant executed and delivered to said Thomas B. Farrington an instrument of writing extending said power of attorney, of which the following is a copy:

"I, John E. Du Bois, in my own right and as executor of John Du Bois, deceased, do hereby make, renew, and extend the within power of attorney according to its terms, and with all the powers therein set forth, and make the same irrevocable for one year from this date. As witness my hand and seal this 10th day of June, A. D. 1886.

"[Signed]                                              John E. Du Bois. [Seal]"

(5) At the same time said Thomas B. Farrington executed and delivered to said John E. Du Bois a separate instrument of writing, of which the following is a copy:

"Whereas, John E. Du Bois has delivered to me a renewal and extension of a power of attorney this day to settle and compromise a certain case in the circuit court of the United States in the Southern district of New York, wherein he is plaintiff and the Trustees of the New York and Brooklyn Bridge, impleaded with the commonalty, the mayor, and aldermen of the cities of New York and Brooklyn, the defendants: Now, in case I shall settle and compromise said claim, I agree that immediately after the receipt of the money, or so much thereof accruing from settlement, to pay over and deliver to my said principal, John E. Du Bois, the sum of twenty-five thousand dollars, and in no event claim or charge him for my services therein, nor for fees, charges, or costs thereof, nor to settle said case by compromise in such a manner that John E. Du Bois shall not receive and realize said sum out of said compromise; and I agree to indemnify him against all fees, costs, and charges on account of said case. As witness my hand and seal this tenth day of June, A. D. 1886.          Thomas B. Farrington. [Seal.]"

(6) By divers instruments of writing, signed by the defendant, and delivered to said Thomas B. Farrington between June 25, 1887, and September 10, 1892, the above power of attorney was extended upon the terms and conditions upon which it had theretofore been held, the last thereof being as follows:

"I hereby extend the above power of attorney upon the same terms and subject to the same conditions and stipulations under which it has heretofore been held for the term of one year from the 10th day of June, 1892. As witness my hand and seal this 10th day of September, 1892.

"[Signed]                                              John E. Du Bois. [Seal.]"

(7) On the 9th day of June, 1888, the legislature of the state of New York passed an act, of which the following is a copy:

"Chap. 564.

"An act to authorize the adjustment of a claim by John E. Du Bois, as executor of the last will and testament of John Du Bois, deceased, and, in his own right against the cities of New York and Brooklyn, in relation to the construction of the bridge between those cities.

"Section 1. The mayors of the cities of New York and Brooklyn, are each authorized to appoint one person, and John E. Du Bois may appoint a third person, and the three persons so appointed shall examine and report whether or not the said John E. Du Bois, as executor of the last will and testament of John Du Bois, deceased, or in his own right, has a just and valid claim against the said cities, for the use, in the construction of the bridge between the said cities, of improvements in the mode of building piers for bridges and other structures, for which it is claimed that letters patent were granted to the said John Du Bois, now deceased, by the United States, dated the twenty-third day of September, eighteen hundred and sixty-two, which have been sustained by a decision of the supreme court of the United States, and if

they find that he has such a claim, what would be a fair and reasonable compensation for the use of said improvements, and upon a report by the three persons so appointed, or a majority of them, that such a claim is just and valid, if the report shall be approved in writing by the mayors of both of the said cities, the comptroller of each city shall pay to the said John E. Du Bois, as executor as aforesaid and in his own right, or his legal representatives, out of any of the revenues of the city the amount reported by the three persons so appointed to be a fair and reasonable compensation for such use, or such part thereof, as shall be authorized and directed in writing by the mayors of both of the said cities, in the proportion in which payments by the said cities, on account of the said bridge, are required to be made by law, upon the execution and delivery by the said John E. Du Bois as executor, as aforesaid and in his own right or his legal representatives, to each of the said comptrollers, of a release of any and all claims against the said cities for the use of said improvement.

"Sec. 2. The persons so appointed, shall have power in the performance of the duty aforesaid, to take testimony under oath, which any of them may administer, and to procure proper evidence by experts.

"Sec. 3. This act shall take effect immediately."

(8) Afterwards, and before June 4, 1891, the following stipulation in writing was executed:

"In the matter of the claim of John E. Du Bois, as executor of the last will and testament of John Du Bois, deceased, and in his own right, against the cities of New York and Brooklyn, in relation to the construction of the bridge between those cities.

"Before Stephen V. White, Jasper W. Gilbert, Charles M. Clancy, referees appointed pursuant to chapter 564 of the Laws of 1888.

"It is stipulated as follows: The fees of the referees shall be to each the sum of $25 per session of from 12 to 4 o'clock, these fees to be paid at the close of the reference and the rendition of the report of the referees, and to be advanced by the successful and taxed against and paid by the defeated party. John E. Du Bois, individually and as executor, and the mayor, aldermen, and commonalty of the city of New York and the city of Brooklyn, and the Trustees of the New York and Brooklyn Bridge, agree that the action pending between them in the United States circuit court for the infringement of patents relating to the placing of piers in deep water shall be discontinued immediately upon the report of the referees appointed under chapter 564 of the Laws of 1888 being made, providing the same shall be adverse to the claimant, or in case the said report be favorable to the said claimant and the report be approved in writing by the mayors of both the said cities, and the amount awarded by the report so approved be paid; but it is expressly understood and agreed that nothing contained in this minute shall be construed as a stipulation or agreement on the part of the said mayors, or either of them, that the said report, when made, shall be approved by them, or either of them. Such discontinuance shall not be made provided the said act shall be repealed before the payment of the award. Written pleadings shall be prepared by the parties, the claimant to submit his pleadings within seven days, and the cities of New York and Brooklyn to have thirteen days thereafter in which to answer; and, if no further pleadings are submitted, the issues arising to be tried according to law, and that the rules of law governing the admissibility of testimony in cases in the courts of law shall be adhered to. Either party may read the testimony of the witnesses in the case of John Du Bois against the mayor, aldermen, and commonalty of the city of New York, the city of Brooklyn, and the Trustees of the New York and Brooklyn Bridge in said United States circuit court, with the same force and effect, and subject to the said objections, as though the same were taken herein, the parties so reading to produce, upon reasonable notice, for cross-examination, the witness whose testimony he reads. It is also stipulated that two referees may hold meetings and take testimony in the absence of the third referee. It is further agreed that nothing contained in the act of the legislature under which the referees are appointed shall be construed to affect in any way any defense before the referees which the two cities, or the trustees, or either of them, might urge in the courts of

the United States to answer to a suit upon the patent in question; and every such defense shall be available herein to the two cities and the trustees.

"Almet F. Jenks,
"Corporation Counsel of Brooklyn.
"Wm. N. Clark,
"Corporation Counsel of New York.
"Knevals & Perry, and
"N. J. & N. J. Waterbury, Jr.,
"Attorneys for John E. Du Bois."

(9) The said Thomas B. Farrington, assuming to act for the defendant, John E. Du Bois, but without any authority to do so other than that conferred by the above-recited power of attorney and the renewals thereof, of his own motion joined in the aforesaid reference under the said act of the legislature of New York, and employed therein counsel and attorneys at law, namely, Knevals & Perry and N. J. & N. J. Waterbury, Jr., and by his (Farrington's) authority, and not otherwise, they signed the above-recited stipulation. The defendant personally did not take any part in entering into said reference, or in making said stipulation, or in the proceedings thereunder. The defendant did not attend any of the meetings of the referees, and it does not appear that he had any knowledge of any of these matters until after the proceedings under the reference had fully terminated.

(10) On the 15th day of February, 1893, the above-named referees made a report in writing against the aforesaid claim of the defendant, and favorable to the plaintiffs herein, and delivered a copy of their report to each of the plaintiffs, but none to the defendant.

(11) On or about the 24th day of March, 1893, the referees rendered to the plaintiffs herein a bill for their services, namely, $3,000 for each referee, making a total of $9,000; and this sum was paid to the referees by the plaintiffs. For the reimbursement of the plaintiffs this suit was brought upon the above-recited stipulation.

(12) There never was any taxation of the fees of the referees. In making out their bill the referees paid no regard to the terms of the above stipulation, but charged what they considered was a fair compensation for their services, without taking into account the number of days they held sessions.

(13) It is difficult to determine with precision from the evidence the number of days upon which sessions were held by the referees. It would seem that they did not exceed eighteen. On several of these days only one referee attended, and on only about six days were the three referees present.

(14) The sessions of the referees were conducted without any regard to the provision in the stipulation, "The fees of the referee shall be to each the sum of $25 per session of from 12 to 4 o'clock." It does not appear that a single one of the sessions held by the referees lasted four hours, or that they sat that long on any day.

(15) One of the referees,—Jasper W. Gilbert,—not regarding the reference "as a trial in court," privately consulted Mr. Van Buren, the engineer of the New York City waterworks, in respect to mechanical and engineering subjects connected with the subject-matter of the controversy, and these private consultations with Van Buren were for the purpose of "posting" said referee, or giving him information upon which to act, and they took place while the case was under consideration by the referees, and before report made.

At the trial the defendant's counsel submitted to the court the following propositions or points, to which the court made the subjoined answers:

(1) The plaintiffs have declared upon a certain contract which they allege was made between John E. Du Bois and them. Answer. This point is affirmed.

(2) That the contract referred to in the first point was not executed by John E. Du Bois personally, but, if executed at all, it was executed by Knevals & Perry and N. J. & N. J. Waterbury, Jr., claiming to act as his attorneys. Answer. This point is affirmed.

(3) There is no evidence sufficient to prove that Knevals & Perry and N. J. & N. J. Waterbury, Jr., or either or any of them, were agents or attorneys of John E. Du Bois. Answer. This point is affirmed.

(4) That the power of attorney from John Du Bois, dated 24th day of June, 1885, to Thomas B. Farrington, which was continued on the 10th of June, 1886, subject to conditions set forth in defendants' Exhibit C, by John E. Du Bois, did not authorize Farrington to intrust a compromise to any other agent or attorney, or to employ any attorneys, for John E. Du Bois to compromise his claim. Neither was Thomas B. Farrington himself authorized in any event to compromise the claim as to John E. Du Bois on any basis by which John E. Du Bois should receive a less sum than twenty-five thousand dollars. Answer. This point embraces two propositions, each of which is sound. Thus regarded, the point is affirmed. But I do not mean to declare that the collateral papers which Farrington executed have any binding effect as against the plaintiffs. My views upon Farrington's authority are expressed in my opinion herewith filed.

(5) The alleged attempted compromise set out in the act of legislature and contract is so unreasonable, unequal, unfair, and outside of the usual and legitimate means and modes of compromise, that it was not within the power of either Farrington to employ attorneys to make such a contract for John E. Du Bois, nor of the attorneys who purported to execute for him to make it. Answer. This point is affirmed.

(6) The referees, having been selected as per stipulation entered into by attorneys at law claiming to represent the plaintiffs and defendant to pass upon issues referred to by act of 9th of June, 1888, were bound by the limitations agreed upon, and were obliged to conduct their investigation and make their report substantially as set forth in said agreement. Answer. This point is affirmed.

(7) Neither the referees nor either of the parties without the consent of the other party could change or vary any of the terms of the agreement of reference. Answer. This point is affirmed.

(8) The taking of evidence on the investigation of the case by the referees, or either of them, without notice of time or place to the parties to be affected by the testimony so as to permit a direct or cross-examination of the persons examined, was such an error or misconduct on the part of the referee or referees as would vitiate the award or finding, and would not be validated by the payments of fees by plaintiffs in this case, so as to compel the other party to pay back the fees thus advanced. Answer. This point is affirmed. Vide Speer v. Bidwell, 44 Pa. St. 23, 27; Passmore v. Pettit, 4 Dall. 270.

(9) If the uncontradicted testimony of Jasper W. Gilbert be regarded as true that he "did not regard it as, a reference at all, as a trial in court, and therefore I spent considerable time in posting myself by consulting with Mr. Van Buren particularly, the engineer of our waterworks, on mechanical and engineering subjects," it was such an error or misconduct as vitiated the award or finding; and particularly would this be so when it is remembered that in the agreement of reference it is stipulated by the attorneys that the issues arising are to be tried according to law, and the rules of law governing the admissibility of testimony in cases in the courts of law shall be adhered to. Answer. This point is affirmed. Vide Speer v. Bidwell, 44 Pa. St. 23, 27; Passmore v. Pettit, 4 Dall. 270.

(10) As it does not appear the referees or the plaintiffs ever reported the alleged award to John E. Du Bois, nor gave him any notice thereof, nor taxed any fees or costs, nor gave him any notice of any claim for taxation, the plaintiffs are not entitled to recover. Answer. This point is affirmed in view of the lack of evidence to supply the place of taxation, or evidence to show that the referees earned any fees under the stipulation.

(11) That under the evidence in the case the judgment of the court should be for the defendant. Answer. This point is affirmed.

And thereupon the court delivered the following opinion.

Johns McCleave, for plaintiffs.
Geo. A. Jenks, for defendant.

ACHESON, Circuit Judge. It is not necessary to decide whether or not the collateral papers of July 24, 1885, and June 10, 1886, ex-

ecuted by Thomas B. Farrington, have any binding force as against the plaintiffs. In the view I take of the case, they may be and are excluded from consideration. Putting them aside altogether, with what authority was Thomas B. Farrington clothed? The utmost extent of his agency is to be found in the power of attorney of June 24, 1885. He had no other authority than is there defined. Now, clearly, he was thereby constituted a special agent, empowered to do specific acts only. There was then pending in the United States circuit court for the Southern district of New York a suit in equity, brought by John Du Bois against the plaintiffs in the present action, for the infringement of letters patent and the recovery of damages therefor. The power of attorney concerned that case, and empowered Farrington "to carry on and conduct to final consummation or to compromise the above-stated case, and all claim, demand, or damages therein claimed or mentioned, in such manner or on such terms" as to him might "seem expedient," with power to receipt for money accruing from the same, and to give a release and discharge therefor. Farrington was thus authorized to do one of two things, namely, either to carry on and conduct the patent suit in the circuit court to a finality, or to compromise it. In the attempted execution of his authority he did neither. Instead of carrying on the case in the circuit court, which was learned in the patent law, Farrington undertook, in connection with the defendants in the action, to withdraw the litigation from that jurisdiction, and to create a special tribunal to determine the rights of the parties. No such course of action was within the terms of the power of attorney, or the scope of the agency thereby created. Nor can the reference be sustained as a "compromise." In empowering Farrington to compromise the case Du Bois relied on the personal knowledge, ability, and integrity of his chosen agent. The agency was a personal trust and confidence. To compromise implied the exercise by Farrington of his own judgment as to agreed terms of settlement. Upon the plainest principles of the law of agency, the authority conferred on Farrington to compromise could not be delegated by him to others. Yet nothing less than this was attempted here. The decision of the three referees was to be substituted for the judgment of the agent, who had been selected because of his supposed personal fitness. Moreover, the stipulation pursuant to the New York act was, in its terms, very unusual. It was wonderfully one-sided. It secured to Du Bois nothing; not even fair play. A report favorable to him would have availed him naught unless approved by the mayor of each of the two cities,—his antagonists. Yet he was clothed with no such veto power in case of a report adverse to him. It is not to be believed that a mode of procedure so extraordinary and unnecessary was contemplated by Du Bois. By no fair reading of the power of attorney can its scope be extended so as to cover the transaction upon which the plaintiffs' claim rests. For these reasons, and other reasons appearing in the answers to the defendant's points, the finding of the court must be in favor of the defendant. And now, to wit, December 23, 1897, the court finds in favor of the defendant.